| | |
|---|---|
| Trey A. Monsour | Vincent J. Roldan (*Pro Hac Vice* pending) |
| Texas Bar Number 14277200 | New Jersey Bar Number 045371998 |
| FOX ROTHSCHILD LLP | MANDELBAUM BARRETT PC |
| 2501 N. Harwood St., Suite 1800 | 3 Becker Farm Road, Suite 105 |
| Dallas, TX 75201 | Roseland, NJ 07068 |
| Phone: (214) 231-5796 | Phone: (973) 974-9815 |
| Email: tmonsour@foxrothschild.com | Email: vroldan@mblawfirm.com |
| *Local Counsel for Aurous Financial Svcs LLC* | *Counsel for Aurous Financial Svcs LLC* |

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORTH WORTH DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| ADWOA BEAUTY LLC | ) | Case No. 25-44261 (mxm) |
| | ) | |
| | ) | |
| Debtor. | ) | |

**DECLARATION OF JEFF SIRCHIO IN SUPPORT OF**
**OBJECTIONS TO FIRST DAY MOTIONS**

I, Jeff Sirchio, hereby do state that I am over 18 years of age, of sound mind, am qualified and competent to make this Declaration, do so of my own personal knowledge, and state as follows:

1. I am the Director of Operations for the Plaintiff Aurous Financial Svcs LLC ("Aurous"), secured lender in the above-captioned matter. As such, I am fully familiar with the facts set forth herein.

2. I make this certification in support Aurous' objections to various "first day" motions filed by the Debtor Adwoa Beauty LLC.

1

**General Response to First Day Motions**

3.      As the pre-petition purchase order lender to the Debtor, I believe Aurous is in a unique position to provide the Court with a more complete overview of the Debtor's business operations, or lack thereof.

4.      I have reviewed the "first day" motions filed by the Debtor in this case and believe they are misleading.

5.      Upon information and belief, the Debtor has only one customer, Sephora. Also upon information and belief, Sephora currently has *no outstanding purchase orders* with the Debtor. Thus, I believe the Debtor has no outstanding purchase orders from anyone.

6.      Upon information and belief, the Debtor also has no employees other than its principal Julian Addo ("Addo").

7.      The Debtor asserts that it has about $3.17 million in inventory currently in the possession of co-packers or warehousemen. I am unaware of any business the Debtor does with any of Shanghai Impact, Flexport International, or PGS360. Upon information and belief, these vendors do not need to be paid immediately, but can be paid within 120 days after the product is delivered.

8.      The Debtor has also provided Aurous with no information with respect to the alleged inventory referenced in its motions, despite Aurous' requests for such information. I believe the inventory, even if it exists, is worth far less than $3.17 million. Certainly, if there is no purchase order or any other intent for someone to buy such inventory, it is worth far less than that amount.

9. Even if the Debtor was to present Aurous with purchase orders, at this point I believe it would be of questionable value. The Debtor has at times presented purchase orders to Aurous that did not materialize.

## Background of Aurous' Prepetition Funding

10. On February 13, 2025, Aurous and Adwoa entered into a Purchase Money Financing Agreement, (the "PO Financing Agreement"). A copy of the PO Financing Agreement is attached hereto as Exhibit A.

11. Pursuant to the PO Financing Agreement, Aurous agreed, from time to time in its sole discretion, to undertake the purchase or otherwise fund the manufacture of goods, along with all associated costs of inspections, shipping, warehousing and insuring of the goods for Adwoa to fulfill pre-sold orders to its customers, who were retailers such as Sephora. See Exhibit A, Sections 2.1; 2.3.

12. To secure the Debtor's obligations to Aurous, the Debtor agreed to give Aurous a blanket lien on "Collateral" as defined in the PO Financing Agreement. The "Collateral" for Aurous' advancement of funds is defined in the Agreement as "[a]ll of [Adwoa's] now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles, as those terms are defined under the Uniform Commercial Code enacted in New Jersey." PO Financing Agreement Section 1.4

13. Section 5.1 of the PO Financing Agreement provides that "[a]s collateral securing the Obligations, [Adwoa] grants to [Aurous] a continuing first priority security interest in the Collateral." Thus, Aurous' liens attach to collateral that is not necessarily goods that are directly funded by Aurous' advances.

14. Aurous' liens are perfected via the filing of that certain UCC-1 financing statement dated May 25, 2025 with the Delaware Department of State, UCC Filing No. 2025 3773246.

15. As of the September 16, 2025, the Debtor owes Aurous $302,539.49 plus interest through the Petition Date, attorneys fees and other costs owing pursuant to the PO Financing Agreement.

**Description of Factoring Agreement and Intercreditor Agreement**

16. On January 30, 2025, the Debtor entered into that certain factoring agreement (the "Factoring Agreement") with Versant Funding LLC ("Factor"). A copy of the Factoring Agreement is attached hereto as Exhibit B.

17. Pursuant to the Factoring Agreement, the Debtor assigned certain accounts receivable to the Factor.

18. On February 13, 2025, the Debtor, Aurous and the Factor entered into that certain Intercreditor Agreement (the "Intercreditor Agreement"). A copy of the Intercreditor Agreement is attached hereto as Exhibit C. Aurous and the Factor agreed that:

   a. Accounts owing to the Debtor arising out of the Debtor's sale of "P.O. Financier Inventory" identified on a Factor Letter are "P.O. Financier Accounts", and inventory of the Debtor identified in a Factor Letter are "P.O. Financier Inventory" P.O. Financier Accounts and P.O. Financier Inventory are Aurous' collateral. Intercreditor Agreement sections 1.13, 1.14, 1.16.

   b. "Factor Collateral" is collateral which secures the Debtor's obligations to Factor. Intercreditor Agreement section 1.8.

   c. Aurous' lien on the P.O. Financier Collateral is senior to the lien of Factor, until Aurous receives the "Release Price" (which is payment of the obligations secured by the P.O. Financier Collateral). Intercreditor Agreement section 2.1.

4

      d.    Factor is instructed to remit proceeds, to Aurous, that would otherwise be remitted from Factor to the Debtor under the Factoring Agreement. Intercreditor Agreement section 3.1, 3.2.

## Description of Prepetition Litigation

19. On October 1, 2025, Aurous sued the Debtor and its principal Julian Addo ("Addo") in the District of New Jersey (Case No. 25-16185) for, among other things, breach of the PO Financing Agreement, fraud, equitable remedies (the "New Jersey Action"). A copy of the complaint (to which I verified, under penalty of perjury) filed in the New Jersey Action (the "Complaint") is attached hereto as Exhibit D. I incorporate the allegations contained in the Complaint as though stated herein in full.

20. As described in the Complaint, the Debtor fraudulently induced Aurous into funding by, inter alia

    a.    Intentionally failing to inform Aurous that certain purchase orders of Sephora were prepaid, which resulted in less accounts receivable owing on account of goods that were created using Aurous' funding. See Complaint paras. 28-44.

    b.    Intentionally submitting a funding request for goods in excess of what Sephora actually ordered, which resulted again in less accounts receivable owing from Sephora on account of goods that were created using Aurous' finding, and the Debtor/ Addo taking the excess goods and selling them to customers for their own benefit. See Complaint paras. 46-62

21. In connection with the Complaint, Aurous sought among other things, a temporary restraining order prohibiting the transfer of its Collateral. A copy of Aurous memorandum of law in support of a preliminary injunction is attached hereto as Exhibit E.

22. Neither the Debtor nor Addo answered or defended the New Jersey Action. The New Jersey Action is still pending, although stayed as to the Debtor.

5

23. In connection with the New Jersey Action, I also submitted a Supplemental Certification on October 17, 2025 (the "Sirchio Certification"). A copy of the Sirchio Certification is attached hereto as Exhibit F.

24. The Sirchio Certification outlines how the Debtor misdirected inventory that Aurous had financed, and sold same directly to end-customers without paying Aurous for the purchase orders. See Sirchio Certification para. 4-6.

25. Furthermore, the Debtor refused to assign approximately $70,000 in Sephora invoices to Versant. See Sirchio Certification para. 8-9.

26. Last, there is inventory that had been in the possession of a warehouse Charles Green Labs ("C-G Labs"). C-G Labs informed Aurous it had no space for inventory and must move it. Aurous currently does not know the location or disposition of this inventory. See Sirchio Certification para. 11-13.

## OBJECTION

27. Against this backdrop, Aurous has serious concerns about the adequate protection offered by the Debtor. In sum, the location and value of the Debtor's inventory has not been disclosed to Aurous, and the corresponding account receivable has continually been less than as stated by the Debtor. Further, the budget attached to the Motion does not demonstrate that Aurous' interests are adequately protected; there is no proof of existence of any sales and expenditures themselves are problematic (such as payment of $68,000 to the Debtor's sole employee, Addo). The Cash Collateral Motion should be denied.

### Objection to Cash Collateral Use

A. The Proposed Protection Is Inadequate.

28. Here, the Debtor proposes to protect Aurous' interests via adequate protection liens. The Debtor however seeks to completely re-write the operative documents. For instance, the Cash Collateral Motion is premised upon the Debtor receiving a $240,000 receivable from Sephora. That receivable however has been assigned to the Factor, and should be paid to the Factor. In turn the Factor would then pay Aurous in accordance with the Intercreditor Agreement.

29. The Cash Collateral Motion (and other motions) are also premised on the existence of inventory, purchase orders that would enable the Debtor to move such inventory, and vendors that must immediately be paid. I do not believe there is support for any of that.

30. Further, Aurous has serious concerns that the value of its collateral will diminish during this case. The Debtor asserts that it has more than enough inventory to enable it to pay Aurous in full. The Debtor however has continually refused to provide Aurous with any disclosure as to the location, identity, or amount of this purported inventory. As stated above, I believe the Debtor has grossly over-stated the value of its inventory and in any event, there is currently no purchase order to support that this inventory can be sold.

31. In addition, as demonstrated above, the Debtor has demonstrated that its records are not trustworthy, in that it forecasted sales have not materialized and the Debtor has continually overstated the value of purchase orders or the corresponding accounts receivable.

32. Indeed, the budget attached to the Cash Collateral Motion ("Budget") does not contemplate any payments going to Aurous, nor does it show an increase in accounts receivable or inventory which could arguably used to serve as evidence that a replacement lien is adequate protection. Ultimately, the Budget does not show any actual sales.

4923-2773-2602, v. 1
179172818.1

33. Further, the Debtor in conclusory fashion asserts that Aurous is protected by the continuation of business operations. The Budget again does not demonstrate the benefit to the estate; it does, however, contemplate $68,000 being paid to the Debtor's sole employee (Addo herself), which annualizes to $816,000 per year. Aurous submits that such salary is exorbitant and should not be approved.

34. Aurous submits that the Cash Collateral Motion should be denied until the Debtor can present sufficient evidence to demonstrate that Aurous' interests are indeed adequately protected as required by the Bankruptcy Code. Absent denial of the Cash Collateral Motion, the value of Aurous' inventory will continue to diminish and Aurous' interests will be irreparably harmed.

## Other Objections

35. Similarly, I do not believe there is a need to pay the vendors identified in the Debtors' critical vendor motion. There is no description of what inventory they possess, the value of such inventory, and to whom the Debtor intends to sell. In any event, because Aurous objects to the use of its cash collateral, the Debtor has no funds to pay the critical vendors.

36. Further, upon information and belief the Sephora receivable (referenced in the Debtor's motion to compel turnover) has been sold to Versant Funding, the Debtor's factor.

In accordance with 28 U.S.C. Sec. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 13, 2025

                                                 /s Jeff Sirchio_____
                                                 Jeff Sirchio

4923-2773-2602, v. 1
179172818.1